F. A. POST, Appellee, v. W. R. NULL et al., Appellants.

**CORPORATIONS:** Conspiracy to Destroy Business. Evidence reviewed, in an action to compel the transfer of shares, and held insufficient to show that plaintiff was in a conspiracy to destroy defendant's business.

*Appeal from Plymouth District Court.*—W. D. BOIES, Judge.

FEBRUARY 16, 1918.

REHEARING DENIED MAY 17, 1918.

ACTION for a writ of mandamus to compel the officers of a corporation to transfer certain shares of capital stock on its books and to issue new certificates therefor. The court found in favor of the plaintiff, and ordered that a writ issue as prayed.—*Affirmed.*

*T. M. Zink,* for appellants.

*H. S. Martin,* for appellee.

STEVENS, J.—The plaintiff alleged in his petition that he was the owner of two shares of stock, which had been duly assigned to him; that he presented same to the officers of defendant for transfer upon its books, and requested the issuance of new certificates; and that the defendant refused to transfer the stock or issue new certificates. The suit was brought against W. R. Null and William Utech, the president and the secretary-treasurer, respectively, of defendant; and in his petition, plaintiff prayed a mandatory writ directing the officers of defendant to transfer the shares of stock and to issue new certificates therefor. The defendant Elevator

Co-operative Company voluntarily entered its appearance herein, and filed joint answer with its codefendants, alleging, in substance, that the Farmers Elevator Company was incorporated some time prior to January 12, 1910; that it subsequently organized, under the Acts of the Thirty-sixth General Assembly, as a co-operative association, with its principal place of business at Le Mars, Iowa; that M. A. Moore & Company is a rival corporation, also having its principal place of business at Le Mars, but conducting similar business at several near-by towns; that plaintiff and M. A. Moore are shareholders in the Moore Company and enemies of defendant; that, by preconcerted plan, arrangement, and conspiracy between themselves and with other shareholders of the Moore Company, they sought to acquire stock in defendant association, for the purpose and with the intent to obtain information respecting the business affairs of defendant association, for the purpose of limiting the territory within which defendant might do business, and to injure and wreck said association, destroy its business, and to obtain control thereof and dictate its policy and affairs; and that plaintiff was not, therefore, at the time he presented the certificates of stock to the officers of defendant for record and transfer, the owner thereof in good faith, but for the purpose above stated.

The trial court rendered judgment in favor of the plaintiff, and ordered that a writ of mandamus issue commanding the officers of defendant to transfer the said certificates of stock and issue new stock to plaintiff therefor.

The contention of appellee in this case is based largely upon our holding in *Funck v. Farmers Elevator Co.*, 142 Iowa 621. The plaintiff and M. A. Moore testified upon the trial of this case, and admitted that they purchased, or procured friends and employees to purchase, 60 shares of the capital stock of the defendant association, and that, for the purpose of voting at a shareholders' meeting, they par-

celed the said stock among its friends and employees. They also admitted that they purchased all of the stock of defendant they could, and would have purchased a controlling interest therein, if they could have done so.

Both the Moore Company and the defendant association handled coal and lumber, and there was sharp competition between them. The defendant association, when it began business, seems to have reduced the price of lumber, and its rival thereafter also sold some kinds of lumber at a reduced price. It may be inferred from the evidence that the rivalry between the two concerns had engendered some personal hostility, and it may be assumed that the Moore Company felt the effect of the defendant's competitive prices and methods of doing business.

However, the case does not turn upon the question of the personal antagonism between members of the respective corporations, or the rivalry between them for the business of the community, but upon the alleged conspiracy or preconcerted effort and purpose of the plaintiff and his associates to do things alleged in plaintiff's petition. The evidence reveals no instance of unfair methods of competition on the part of either of the rival concerns, or that plaintiff or his business associates had misrepresented the affairs of defendant, or in any way sought to boycott its business, or to secretly or otherwise obtain information of its affairs for the purpose of interfering with its customers or dealers, or in any unlawful or dishonest way to injure or destroy the business of defendant. It may be that the plaintiff and his business associates purchased the stock in question, and sought to purchase other stock, for the purpose of controlling the business policy of defendant, reducing competition, and harmonizing the prices of the respective commodities handled by the two concerns; but this is supported only, at most, by inference from the testimony, and both the plaintiff and Mr. Moore testified that they had no such purpose, and denied a

conspiracy or desire to injure the business of defendant, and asserted that they purchased the stock as an investment. It is, however, admitted by them that defendant was selling lumber too cheap, and that the expenses of its management were unnecessarily large; but they testified that they desired to become shareholders in defendant association and obtain representation upon its board of directors for the purpose of counseling and advising with its officers, and to improve its business methods, reduce expenses, and increase the profits to its shareholders. It may be doubted whether this assumed benevolent attitude was the sole motive that prompted this action; but the evidence, in our judgment, wholly fails to sustain the allegations of defendant's answer that plaintiff was not a good-faith holder of the stock. He and his business associates owned 60 shares, for which, so far as appears from the evidence, they paid full value.

No evidence of a conspiracy or preconcerted plan or arrangement on the part of plaintiff and his associates to injure or destroy the business of the defendants was introduced upon the trial. There was some evidence to the effect that Moore had stated, at a shareholders' meeting, that the two concerns should get together and harmonize prices, and that some independent effort was made by him to bring about an understanding between them on this point. It is not, however, alleged in plaintiff's petition that plaintiff sought control of the defendant corporation for the purpose of forming an unlawful combination to fix or control prices; and the evidence, in any event, is not sufficient to have sustained such allegation, if same had been made. The evidence shows that there were some reciprocal business relations between the two concerns, and fails to disclose any facts tending to show that plaintiff or his agents had in any way sought to misrepresent the business of defendant, or to in any way interfere with its business, customers, or other persons or concerns with whom it did business.

The facts do not bring the case within our holding in *Funck v. Elevator Company*, supra. A comparison of the record in the two cases will show a very different state of facts. In the *Funck* case, the plaintiff was not a good-faith holder of the stock, but was, as the court said, a mere puppet of other parties, who were seeking, by various dishonest methods, to destroy the business of the defendant.

It is our conclusion that the evidence in this case sustains the holding of the trial court, and its judgment is, therefore,—*Affirmed*.

PRESTON, C. J., LADD and GAYNOR, JJ., concur.